WILLIE C. BRASFIELD ET AL. v. MARY J. C. FRENCH ET AL.

1. WILL. *Continuing business. Estate of deceased person.*
   Directions in a will that the business of a banking firm of which the testator was a member shall be continued does not render liable to subsequent creditors of the bank the part of his estate not invested in this business, unless it appears unequivocally that he intended it to be bound.

2. SAME. *Estate's liability. Partnership.*
   His intention is to be gathered from the entire will; but notwithstanding authority given his surviving partner to sign the firm name to contracts, as if.the testator was living, a declaration that the capital of the company is to remain and be used as heretofore, excludes the idea that he intended to invest his other estate.

3. SAME. *Duration of business. Power of survivor.*
   Under a provision that the capital of a firm shall remain and be used as heretofore until the expiration of two years, or such further time as may be necessary to close the business without injury to either party, the survivor may charge the testator's interest by a contract made more than two years after his death.

4. SAME. *Estoppel.*
   Special legatees or creditors of the testator can force the closing of the business after two years, but the residuary legatee who, as executrix, continues the bank with the survivor after this time cannot defeat subsequent creditors who afterwards deal with the bank.

5. MARRIED WOMEN. *Receiving profits. Executrix.*
   Reception of profits by such executrix who is married, is not such engaging in trade or business as to render her separate estate liable to the firm creditors under Code 1871, § 1780, but she is protected by her coverture from any demand against her as partner in the firm.

6. SAME. *Decree. Notice. Chancery jurisdiction.*
   A decree discharging her as executrix without notice to the bank creditors is void as to them, and they may proceed in the Chancery Court, which has jurisdiction of bills against estates of deceased persons being administered. *Hunt* v. *Potter*, 58 Miss. 96, cited.

7. SAME. *Estates of deceased persons. Devastavit.*
   Coverture will not avail against a proceeding to reach the assets received by her from the bank, for if she holds the funds as executrix they are subject to the creditors' claims, and if she has converted them to her use, coverture is no defence against a demand for devastavit.

8. CHANCERY PRACTICE. *Amendment. Demurrer sustained. Appeal.*
   Leave to amend a bill on sustaining a demurrer to it does not preclude an appeal; but if the Chancellor's decree sustaining the demurrer is affirmed, *quære*, will the Supreme Court permit the amendment ?

APPEAL from the Chancery Court of Monroe County.

Hon. L. HAUGHTON, Chancellor.

The appellants, who hold a certificate of deposit of the banking house of Adams, Spratt & Co. issued after Adams's death, filed this bill against Mrs. French, his executrix and residuary legatee, and Spratt his sole surviving partner, setting out the will and a chancery decree without notice, discharging the executrix and giving her all the testator's estate, and praying that the assets of the bank and Adams's entire estate be subjected, or that appropriate relief be given. A demurrer was sustained with leave to amend.

*Murphy, Sykes & Bristow*, for the appellants.

1. The will authorizes the business to be carried on as before the testator's death, and new contracts to be made and obligations to be incurred, for two years and such further time as may be necessary to close up the banking without injury to either party. This construction has been acted on by the surviving partner and the executrix, who is the residuary legatee. While so conducting the bank, the appellants' money was received, and the appellees cannot now repudiate this construction. *Davis* v. *Bowmar*, 55 Miss. 671; *Calanan* v. *Mc-Clure*, 47 Barb. 206; *Thomas* v. *Brooks*, 6 Texas, 369; *Thayer* v. *Hollis*, 3 Met. 369; Herman on Estoppel, § 323. If further time was not necessary, this is peculiarly within the knowledge of the executrix; the burden of proof is upon her, and she must show the fact.

2. An intention to make the entire estate liable, whether invested in the bank or not, is clearly deducible from the will. Continuance of the business is the testator's chief object; from it the legacies are to be paid, and final settlement under the will is impossible until the banking is closed. The testator's intention fairly expressed must govern. The real question is, "Whether by operation of law, on a true construction of the instrument," the general assets are liable. *Pitkin* v. *Pitkin*, 7 Conn. 307, 312. But adopt the specific language used in *Burwell* v. *Mandeville*, 2 How. (U. S.) 560, and we claim that, there is, disclosed in Adams's will, in clear and unambiguous language, an intention to make his general assets liable for the firm debts contracted after his death. A similar construction of exactly

analogous language is given by the Supreme Court of Pennsylvania, in *Commonwealth* · v. *Pittsburgh*, 41 Penn. St. 278, approved by the United States Supreme Court, in *Seybert* v. *Pittsburg*, 1 Wall. 272.

3. Firm assets have been divided between Spratt and the executrix. The estate was certainly liable to the extent of the firm assets, and the executrix, as residuary legatee, has received these assets. She, as executrix, is liable therefore for the amount in her hands subject to this character of debt. Whether she has received sufficient to pay this debt, or what amount more or less she has received, must be set up in her answer.

4. Under authority of *Hunt* v. *Potter*, 58 Miss. 96, the jurisdiction of the Chancery Court is clear. And, on general principles, it makes no difference whether she now holds the assets as executrix or residuary legatee. She holds them as trustee for the creditors of the estate, and as such can be pursued in a court of chancery.

5. While debts remain unpaid, a final account and discharge of an executor will not discharge him from liability to be sued as executor on such claims. *Henderson* v. *Winchester*, 31 Miss. 290 ; *Pollock* v. *Buie*, 43 Miss. 140. And particularly will this rule apply to a case like this, where the executrix was discharged, without notice, on the ground that she was sole residuary legatee, and the debts were paid, though it appeared, in fact, from her petition, that the estate was not ready for final settlement, and by order of the court she took the whole estate in her own hands.

6. Even if, under the will, the estate of Adams is not liable at all, the executrix is individually. According to all authorities, if she individually allowed her means, or means belonging to her as residuary legatee, to remain and be employed in the trade or business of banking, she is liable though she be a married woman, under Code 1871, § 1780. That she did so allow said means to so remain and be employed, sharing in the profits, is clear from the bill.

7. The objection of the appellees, that this appeal is not properly taken, on account of the " leave to amend " granted in the interlocutory decree appealed from, is without force.

No matter what the decree contains, it is an interlocutory decree, and the court has granted an appeal therefrom, "in order to settle the principles of the cause." Code 1880, § 2311. Objection should be made to the Chancellor, as it was in his discretion to grant the appeal. It was eminently proper to reserve leave to amend in the decree sustaining the demurrer of part of the defendants, so that if the Supreme Court should affirm the decree on account of some amendable defect or omission in the bill, the complainants might still stand in position to assert their rights.

*Houston & Reynolds*, for the appellees.

1. Authority cannot be found in the will for continuing the banking business after two years, except for the purpose of closing it, and borrowing money was no part of the winding up of the concern. Continuance of a partnership after the death of one of the partners must be authorized by distinct and positive directions in the will for that purpose, fixing the duration. *Kirkman* v. *Booth*, 11 Beav. 273; *Travis* v. *Milne*, 9 Hare, 141; Parsons Part. 455; 3 Williams on Executors, 1793. Estoppel upon the executrix does not result from her consent to the continuance of the business. She must at least have knowledge of this particular transaction. To avail the appellants, it must also appear that they were influenced by it, and induced to make the deposit upon the faith of the acts and conduct of Spratt and the executrix. Herman on Estoppel, §§ 323–325. The law charges the appellants with knowledge of the will of Adams and of the power of Spratt and the executrix, and the limitations upon that power. *Smith* v. *Ayer*, 101 U. S. 320.

2. If Spratt had authority to bind the estate of Adams by the contract of deposit which he made with the appellants, it is not chargeable upon the general assets of the estate, but only upon the assets of the firm of Adams, Spratt & Co. *Burwell* v. *Mandeville*, 2 How. (U. S.) 560; *Smith* v. *Ayer*, 101 U. S. 320; *Jones* v. *Walker*, 103 U. S. 444; *Pitkin* v. *Pitkin*, 7 Conn. 307; *Alsop* v *Mather*, 8 Conn. 584; *Cutbush* v. *Cutbush*, 1 Beav. 184; *Ward* v. *Harrington*, 29 Miss. 238; *Hagan* v. *Barksdale*, 44 Miss. 186; *Edgar* v. *Cook*, 4 Ala. 588; *Stanwood* v. *Owen*, 14 Gray, 195; *Bacon* v. *Pomeroy*, 104 Mass. 577. If the assets

of Adams, Spratt & Co. alone are chargeable, then they can be reached by a decree against the surviving partner. There can be no action against the executrix unless the decree subjects the general assets. *Edgar* v. *Cook*, 4 Ala. 588.

3. It is contended that if the estate of Adams is not liable, then the executrix individually is. The firm business of Adams, Spratt & Co. was continued under the will of Adams by Spratt, the surviving partner, and not by the executrix. It is the party who conducts the business after the death that becomes individually liable. The executrix, not having conducted it, is not liable. *Ex parte Garland*, 10 Ves. 110; *Citizens' Ins. Co.* v. *Ligon*, *ante*, 305. Moreover, Mrs. French was a married woman, and her compliance with the will, in receiving profits and the like, was not within the purview of the statute which charges the estate of a married woman for the debts of a trade or business in which she engages. *Netterville* v. *Barber*, 52 Miss. 168; *Newman* v. *Morris*, 52 Miss. 402; *Duncan* v. *Robertson*, 58 Miss. 390.

COOPER, J., delivered the opinion of the court.

The testator, by directing the continuance of the business of banking, in which he had been interested during his life, did not render liable to the subsequent creditors of the bank the general assets of his estate. It may be true, as urged by counsel for the appellants, that the principal object which the testator had in view in making his will was to provide for the continued prosecution of the business, and that he looked to the property therein invested, and the profits to be therefrom derived, as the principal source whence the legacies given by him were to be realized; and that the provisions of his will were such that the estate could not be finally administered even as to the property not embarked in the banking house of Adams, Spratt & Co., until the business of that firm should be finally settled; and yet the intention may not have existed to charge his whole estate with the hazard incident to its prosecution. The rule is, that where one, by his will, directs the continuance of his trade, only such portion of his estate as is at the time of his death invested in the business is to be considered as pledged to its subsequent creditors, unless it is

unequivocally shown that the general estate, or some part of it, is intended to be bound.  One may by will direct his whole estate to be devoted to the purposes of trade, or make it responsible for the debts subsequently to be contracted in a business to be carried on either by his executor alone, or by the surviving members of his firm, or by both such survivors and his executor ; but his intention so to do is not sufficiently shown by a simple direction that the trade carried on by him individually, or that of a firm in which he is a member, shall be continued after his death.  It is true, that whether the general estate is or is not bound, is to be determined by the intention of the testator as expressed in the will, and that this intention, if disclosed by an examination of the will, as a whole, will be enforced just as it would have been if positively declared, but we do not think the intention of the testator to charge his general estate is shown by the analysis of his will as presented by the counsel for the appellants.

He first directs that the business shall be continued under the supervision of his partner, Spratt, and then unnecessarily proceeds to give him authority to sign the company's name " to any instrument binding or releasing said company to any and all contracts, within the scope of said banking business, as if I were still living."   But who and what is Spratt authorized to bind ?   It is the company, not the general estate of the testator, the company, composed of Spratt and so much of the estate of the testator as by his will he has devoted to the enterprise.   What this is is shown by the succeeding paragraph of the will.   In the clause just quoted, the testator is intent only on conferring upon his surviving partner the power which he deemed it necessary he should have for carrying on the business, evidently impressed with the idea that a mere direction to carry it on did not confer the power necessary to its prosecution.   In the next paragraph, however, he proceeds to indicate the property devoted to the business, the time it shall continue, the division of the profits and losses, the compensation to be allowed to the surviving partner for his services, and the extent to which his interest in the firm shall be bound for the hire of a clerk in excess of the interest of Spratt.   This clause is, " that the capital of said company remain and be

used as heretofore by said firm until the expiration of two years, or such further time as may be necessary to close up the business of said firm without injury to either party; that the profits and losses shall be shared as heretofore, and that said Henry D. Spratt shall receive from said company $2,000 annually, and the said executrix shall pay the salary of John C. Wicks, $2,000 annually, or some other efficient person to be approved of by said H. D. Spratt." It is the interest of the testator in the capital of said firm that is to be continued in it, to " remain and be used as heretofore," and this declaration of what was to " remain " in said business excludes the idea that it was intended by the testator to invest therein any other portion of his estate. *Smith* v. *Ayer,* 101 U. S. 320 ; *Ex parte Garland,* 10 Ves. 110; *M'Neillie* v. *Acton,* 4 De Gex, M. & G. 744 ; *Burwell* v. *Mandeville,* 2 How. (U. S.) 560.

The power of the surviving partner to charge the interest of the testator in said firm did not cease at the expiration of two years after the death of the testator. The will directs that the capital stock of said company shall " remain and be used as heretofore by said firm, until the expiration of two years, *or such further time* as may be necessary to close up the business of said firm without injury to either party." The creditors of the testator might have insisted upon an immediate settlement of the business, and an appropriation of the interest of the testator therein to the payment of their demands against him ; and the parties to whom special legacies were given by his will might have proceeded at the expiration of two years to enforce its discontinuance, by showing that further time was not necessary ; but, in the absence of any such objections, it was left by the will to the discretion of the executrix and the surviving partner to determine how much longer time than two years was needed to enable them to wind up the business so as to conserve the interest of both parties in the mean time. It was not required that at the expiration of two years all business should be suspended, except the collection of the debts due the firm, for the will expressly provides that the capital shall remain and be used as heretofore, " until the expiration of two years, *or such further time,*" &c. The transactions of ordinary business were to be carried on. If

the business was to be conducted as usual for the term of two years, then the giving of further time in which to wind up the unsettled affairs of the company was wholly unnecessary, as without such express delegation of authority it would have existed in the surviving partner *ex necessitate rei.*   If any effect is to be given to this clause of the will, it must be construed as conferring permission on the executrix and surviving partner to continue the business of the firm, if at the expiration of the two years it should seem to them advisable so to do, to advance the interest of the partners ; and, certainly, if this power existed at all the executrix, who is residuary legatee under the will, cannot now assert that she abused the confidence reposed in her, when called to account by persons who dealt with the firm after the expiration of two years, and who had the right to believe that further time was necessary, because she and the surviving partner by continuing the business had in effect declared that it was.

It is charged in the bill that the executrix shared in the profits of the business, and thus became personally liable to the creditors of the firm as a partner.   In England, the rule first enunciated in *Grace* v. *Smith*, 2 Wm. Black. 998, that a person sharing in the profits of a firm became liable as a partner to its creditors, has been to some extent modified by the cases of *Cox* v. *Hickman*, 8 H. L. Cas. 268; *Kilshaw* v. *Jukes*, 3 B. & S. 847, and other cases cited and discussed in Lindley on Partnership, 39.   A consideration of the question is unnecessary here, because we are of opinion that as to the claim asserted by the complainants, Mrs. French is not liable as a partner, because she was a *feme covert* at the time the money sued for was received by the firm of Adams, Spratt & Co. Code 1871, § 1780, provides that " any married woman may rent her lands, or make any contract for the use thereof, and may loan her money, and take securities therefor, in her own name, and employ it in trade or business. . . . And when a married woman engages in trade or business as a *feme sole*, she shall be bound by her contracts, made in the course of such trade or business, in the same manner as if she was unmarried." Under this statute we have held that a married woman may become a partner in a firm.   *Newman* v. *Morris*, 52 Miss. 402.

In *Netterville* v. *Barber*, 52 Miss. 168, it was said that the effect of the statute is, " that a married woman may engage in trade in the commercial sense, and in other employments which require time, labor, and skill, and shall be bound by her contracts made in the course of such business." It may therefore be conceded that since the adoption of the Code of 1871, a married woman has been so far emancipated from the disabilities of coverture as to enable her to engage in any enterprise of a commercial or other character, in which she either invests her separate estate, or her time, labor or skill, and that for contracts made in such business, whether prosecuted by herself alone, or by a firm in which she is a member, she would be liable as would be a *feme sole.* There is, however, no allegation in the bill in this cause, that Mrs. French contributed either her time, labor or skill to the business of the firm of Adams, Spratt & Co., and it is evident that the capital of said business was exclusively contributed by Spratt and the estate of Adams. The profits arising from the business which were paid over to her did not thereby become a part of her separate estate, for until the settlement of the estate of Adams it was in her hands as the executrix of his will, and whether or not any part of it, or if any part, how much of it would become hers as residuary legatee, was dependent both upon the value of the estate and the amount of the debts and legacies with which it was chargeable. Receiving these profits as executrix was not such engaging in trade or business as was contemplated by the statute, and she is protected by her coverture from the demand made against her by the complainants as a partner in the firm.

The complainants are not affected by the decree of the Chancery Court discharging Mrs. French on her petition from her office of executrix. As to them the order is a nullity, and they may proceed against her as if the estate was still open in the court granting the administration of the will. *Pollock* v. *Buie*, 43 Miss. 140. The Chancery Court has jurisdiction because this is a proceeding against the estate of a deceased person being administered. *Hunt* v. *Potter*, 58 Miss. 96.

Though, as we have said, Mrs. French is not liable as a creditor to the demand asserted by the complainants, she can-

not interpose her coverture as a defence, if it shall appear that trusting to the decree discharging her, she has converted the assets of the estate liable to their claim to her own use. As to these creditors she is still executrix of the estate of Adams, and liable to account to them as such for any *devastavit* she has committed. If the assets received by her from the firm of Adams, Spratt & Co. are still in her hands, they are subject to the complainants' claim, and if she has converted them to her own use she is guilty of a *devastavit*, and is liable notwithstanding her coverture. 3 Williams on Executors, 1840; *Adair* v. *Shaw*, 1 Sch. & Lef. 243; *Clough* v. *Dixon*, 8 Sim. 594; *Soady* v. *Turnbull*, L. R. 1 Ch. 494; *Bellew* v. *Scott*, 1 Strange, 440.

The fact that the Chancellor, on overruling the demurrer, gave to the complainants leave to amend their bill, did not preclude them from prosecuting an appeal. They had the right if they desired so to do, to stand upon the bill as originally drawn, and were not bound to accept the leave to amend. It may be that by prosecuting an appeal they have waived the right to amend; but, as the demurrer was improperly sustained and the leave to amend was unnecessary, we need not determine what result would have followed the affirmance of the decree of the lower court on the demurrer.

*Decree reversed.*