CHARLES T. BROWN, et al., Appellants, v. F. W. AYDLETT, et al., Appellees.

Western Section. November 26, 1930.

Ewing, King & King, of Memphis, for appellant.

Fitzhugh, Murrah & Fitzhugh, Harsh, Harsh & Harsh, Kyser & Allen and Burch, Minor & McKay, all of Memphis, for appellee.

HEISKELL, J. This is a bill filed to construe the will of Mrs. Mamie A. Goodwyn, who died in Memphis, Tennessee, on August 11, 1929. In this will she named the complainants as executors and trustees.

While the decree is not satisfactory to either complainants or defendants, the trustees are called appellants and the defendants appellees and will be so referred to in this opinion.

The Chancellor's finding of facts is a good presentation of the background of this case. It is as follows:

"The Goodwyn Crockery Company, a corporation, was organized in the year 1921, by Mr. Robert Goodwyn, the husband of Mrs. Mamie A. Goodwyn whose will is here before the court for construction. Mr. Goodwyn died in November, 1921, leaving his entire estate to his widow. He was a semi-invalid during the latter years of his life and Mrs. Goodwyn actively participated in the management of the business and became thoroughly familiar with its affairs. The Goodwyn Crockery Company conducts a wholesale business in crockery, glassware, queensware and associated lines and was capitalized at $200,000, Mr. Goodwyn owned practically all of its shares of stock. On his death Mrs. Goodwyn became President of the corporation and assumed its management and control. In April, 1929, Mrs. Goodwyn went to a hospital for some minor operation and it was then discovered that she had a cancer and was in such condition that it was apparent she could never recover. On April 13, 1929, after she was aware of her fatal malady, she executed her last will. On April 16, 1929, she executed her first codicil thereto and on May 10th and July 23rd, executed codicils two and three, respectively, and died August 11, 1929, in the fifty-seventh year of her age.

"(2) The Goodwyn Crockery Company, though doing a large volume of business, with some profitable years, had never declared a dividend down to the time of Mrs. Goodwyn's death. The corporation was solvent. Mr. Goodwyn had endorsed for the corporation to secure bank credit of $50,000 and after his death Mrs. Goodwyn personally guaranteed to the bank a line of credit of $50,000, and, in addition maintained a credit of $30,000 on her personal endorsement, with a Chicago concern.

It appears that the business is more or less seasoned, with the dull period coming during the summer months. It was considered desirable to be in a position to take advantage of trade discounts on merchandise purchased. Mr. and Mrs. Goodwyn had personally made advancements to the corporation, from time to time, in the aggregate of some $220,000. This indebtedness was cancelled by Mrs. Goodwyn, under the advice of her banker, in order to improve the financial condition of the corporation. She required the minority stockholders to pay a pro rata of the amount charged off by making notes in the aggregate sum of $7,037.95 and which were to be paid out of dividends.

"(3) It appears that Mrs. Goodwyn left $45,000 of life insurance payable to the company, which was collected and put into the business. This insurance was taken out in the year 1924, and the premiums paid by the corporation. The proceeds of this insurance approximated the line of credit extended the corporation by the bank on Mrs. Goodwyn's guarantee.

"(4) Mrs. Goodwyn at the time she executed her will and codicil thereto, believed that she had established the Crockery Company upon a firm financial foundation. While the fiscal year ending July 1, 1927, showed a loss of $10,478.17, with a surplus of only $82.79, the record shows the business to be now in a flourishing condition. On the statement of June 30, 1929, R. Brinkley Snowden testifies that the corporation is entitled to credit sufficient to operate on $50,000 or $60,000, and if they applied to his bank they could get such a line, with the endorsement of an officer, without regard to his worth.

"(5) Mrs. Goodwyn owned $185,500 taken at par value of the $200,000 capital of the corporation, at the time she executed her will. During July, 1929, prior to the making of the last codicil, she sold $43,800 of her stock to employees of the Company on long time notes, knowing that practically the only chance for the payment of the notes was out of earning. These notes were secured by the certificates of stock, as collateral. At the time of her death, Mrs. Goodwyn owned 1360 shares of the capital stock of the corporation. By the terms of her will, 120 of these shares are specifically bequeathed, thus leaving her estate owning 1240 shares, valued in the inventory at $88 per share, or $109,120. The business was indebted to her for uncancelled advances in the sum of $24,000. Mrs. Goodwyn owed the Crockery Company the sum of $5,823.11 less $366.67 salary due her. Thus the net amount she had in the corporation at the time of her death was $127,663.56. She had an affectionate interest in the Company and believed she had established it upon a firm foundation.

"The total estate of Mrs. Goodwyn undisposed of by specific bequest or devise, excluding assets in or connected with the Crockery Company, amounted to approximately $230,385. The total of her debts was $108,893.30, leaving a net balance of about $121,491.70. Income was produced only on about $46,630 of her property undisposed of specifically and not connected with the Crockery Company.

"(6) On May 10, 1929, Mrs. Goodwyn wrote to her executors appointed under the will the following letter and found enclosed with her will:

" 'Memphis, Tenn.,

" 'May 10th, 1929.

" 'To F. W. Aydlett,

" 'Chas. T. Brown and

" 'Fred S. Toombs.

" 'Having faith in your honesty, integrity and loyalty, I have named you executors and trustees of my last will and testament.

" 'In performing the duties incident to this appointment, I am fully satisfied you will be actuated by my wishes where they are expressed and will at all times act to the best interest of my estate.

" 'No one knows better than you three my devotion to and interest in the Goodwyn Crockery Company. It is and has always been close to my heart, I have labored hard to make it a success and now my labors are about to be rewarded. I have grown up with the business and know its needs. I have built up a very capable organization, whose devotion and loyalty have drawn me very closely to them, and it is my sincere wish that the personnel of the organization be maintained as far as possible.

" 'In the re-organization of the Goodwyn Crockery Company after my demise, it is my wish that Chas. T. Brown be elected President of the Company; that Irvin W. Matthews be elected first Vice-President, succeeding Chas. T. Brown and that the remaining officers and employees retain the positions now held by them, pending changes necessary to the proper administration of the business.

" 'I have given the matter of the re-organization great thought and it is my opinion that the best interests of the Company will be served by following the re-organization plan suggested by me.

" 'With these suggestions, I leave the management of the Goodwyn Crockery Company and the remainder of my estate to your discretion and good judgment, I am,

" 'Sincerely,

" 'Mamie A. Goodwyn.'

"(7) It was the intention of the testatrix that the payment of the monthly cash bequests should begin as soon as practicable after her death. She desired the beneficiaries of the monthly bequests to receive the benefit of the bequests as soon as possible. F. W. Aydlett, brother of the testatrix, had been assisted financially by the testatrix for a number of years. She induced him and his wife to remove from Little Rock, Arkansas, to Memphis, in the year 1926, and live with her. This brother's wife kept house for her. Testatrix willed him for life the residence 1572 Central Avenue, Memphis, a large house, costing several hundred dollars per month for upkeep, taxes and insurance. F. W. Aydlett's income was only $3,000 per year; he was and is unable financially to meet the financial burden of keeping up this place without the benefit of the cash bequest. Testatrix' brother, Tom Aydlett, is about 70 years of age. Owns $10,000 of stock in the Crockery Company. For years testatrix paid him $50 per month on this stock and provided a monthly cash bequest of $50 to him as long as he owns this stock. Testatrix' niece, Jimmie May Luttrell, is a woman of no means, and was practically taken care of by testatrix for the past eight or nine years. Her husband is a wounded soldier and practically his only income is what he gets from the government.''

The questions of construction presented to the court all arise upon four clauses of the will which are:

"XIX. It is my wish that my executors and trustees hereinafter named, in whom I have full faith, continue the operation of the Goodyn Crockery Company for a period of ten (10) years from my death, but if, at any time within this period, my executors and trustees decide that it is to the best interest of my estate that said Company be liquidated, they have the power to exercise their discretion and it is not the spirit of my will to interfere with them in any way in the operation of said business.

"XX. I have hereinbefore willed, devised and bequeathed to my said executors and trustees certain real estate, stocks, bonds, notes and securities, and it is my wish that the disposition or re-investment of these, be left to their sound discretion, but that the real estate herein conveyed to them, be sold within ten (10) years from my death. The right to mortgage and sell the real estate herein conveyed to my executors and trustees is hereby specifically granted them.

"XXI. I hereby direct my executors and trustees hereinafter named ten (10) years after my death, or as soon thereafter as possible, to set aside a fund sufficient to care for the

monthly cash bequests for life hereinbefore made by me and to divide the remainder into two (2) parts: one part to be given equally, share and share alike, to Sarah Perkins Allen, Anne Perkins Phillips, Newton Cannon Perkins, Robert Goodwyn Heard, Sr., and William Stephen Goodwyn, all relatives of my deceased husband, Robert D. Goodwyn, and the remaining one part to be divided into two (2) parts and given to Blanche Aydlett, Mary Goodwyn Aydlett, Florence Aydlett, children of my deceased brother, James R. Aydlett, and the other part to Roberta Goodwyn Drake and Frank Drake, Jr., children of Lulu Aydlett Drake.

"XXII. The fund set aside for the satisfaction of the cash bequests for life hereinbefore made by me, is, upon the death of any one of the cash legatees, to be reduced pro tanto and the amount so reduced, is to be paid to Roberta Drake, daughter of Lulu Aydlett Drake.''

The first paragraph of the Chancellor's opinion states the questions presented for determination thus:

"(1) The last will of Mrs. Mamie A. Goodwyn, deceased, is before the court for construction with reference to (a) the authority of the trustees named therein to pledge or mortgage the assets of the trust estate for the purpose of borrowing money with which to operate the Goodwyn Crockery Company, a business in which a portion of the trust estate is invested and which business they are authorized to operate for a period of ten years, or less, as the best interests of the estate might dictate; (b) with reference to the time the trustees may set aside a sufficient fund to care for the monthly cash bequests for life provided for in the will; (c) with reference to the time payment of said monthly cash bequests is to begin and (d) whether they are to be paid out of corpus of the trust estate or out of income, prior to the setting aside of the fund for their care.''

(1) The court held that the trustees were not empowered to pledge the credit of the estate, or to pledge or mortgage the assets of the trust estate other than the stock of the Goodwyn Crockery Company for the purpose of raising money to operate said company.

(2) That the division of the trust fund to set aside a sufficient amount to care for the monthly cash bequests for life, and disbursement of the balance, as provided by Item VIII of Codicil 3, is to be made as soon after the death of the testatrix as possible; and such division need not await the expiration of ten years from the date of the testatrix' death.

(3) That payments of the monthly cash bequests for life are to begin as soon as practicable after testatrix' death, and are not necessarily to be postponed until the setting aside of a fund sufficient to take care of them.

(4) But that, prior to setting aside such fund, the monthly cash bequests are to be paid only out of the income from the whole trust estate; and thereafter, out of the income from the special fund set aside to take care of them.

These rulings of the Chancellor which were carried into the decree were satisfactory to the appellees except the holding that the trustees were entitled to use or mortgage the stock of the Crockery Company to raise money or obtain credit to carry on said Company. On the other hand, this and the third ruling as set out above were the only parts of the decree to which appellants do not object.

(1) They contend that the will should be construed to give the trustees power to pledge or mortgage any of the properties of the estate in order to raise money needed at any time to carry on the Crockery Company.

(2) They contend that it was error to hold that the fund to take care of monthly cash bequests should be set aside as soon as possible after the death of the testatrix, instead of as soon as possible after the end of ten years from the date of her death.

(3) They say:

"The court erred in holding that until such fund is set aside the monthly cash bequests are to be paid only out of income from the whole trust estate to the extent the income will provide for such payments and in holding that at the time the fund is set aside by the trustees to care for said cash bequests for life all of the rest of said trust estate will be divided into equal parts and distributed by the trustees as provided by the will."

We do not understand the appellants to object to the ruling that the monthly payments should begin at once, but to the holding that the trustees are confined in paying said bequests to the income of the estate and are not allowed to use any of the corpus thereof.

We find no difficulty in agreeing with the Chancellor in his first ruling that the trustees cannot use any assets of the estate except the stock of the Crockery Company to raise money to carry on said Company.

The trustees contend that the right to use other assets of the estate should be implied because the testatrix used her property outside of the corporate stock to finance the company and because she instructed them to continue the business, but the rule is:

"A power to carry on the testator's trade, or to continue his business in a firm of which he was a member without anything more, will be construed as an authority simply to carry on the trade or business with the funds already invested in it at the time of the testator's death, and to subject that fund only to the hazards of the trade and not the general assets of the estate." Willis v. Sharpe, 113 N. Y., 586, 21 N. E., 705.

In the absence of some clear authority in the will, the other assets of the estate not invested in the business, cannot be subjected to the risks of trade merely because the will directs that the business be carried on. Such other assets cannot be made liable for debts contracted by the representatives in carrying on the business. This rule is announced in Covington v. Covington (Ky.), 245 S. W., 275, a case very similar to the present case.

Other authorities to the same effect are: Morrow v. Morrow, 2 Tenn. Chan., 549; Niellie v. Acton, 4 De G. M. & G., 744, 53 English Ch., 583; Burwell v. Cawood, 2 Howard, 560, 11 L. Ed., 378; Smith v. Ayer, 11 Otto, 320, 25 L. Ed., 955; Lovell v. Schofield, 217 Fed., 708; Lucht v. Behrens, 28 Ohio State, 231, 22 American Rep., 378; Perry on Trusts, Section 429; 24 C. J., pp. 60, 61, Sec. 479; Brasfield v. French, 59 Miss., 632.

No express authority can be found in the will to use for the benefit of the Crockery Company the assets of the estate other than that portion of the estate invested in said company, therefore the holding is correct that no such power was granted.

We think it just as clear that the contention of the appellees is not sound, that not even the stock of the corporation can be pledged in order to continue the business. The stock and assets of the corporation are necessarily at stake in its operation and the trustees are authorized to use same for the best interest of the business which they are to carry on. This does not mean that they are to act without the co-operation of other stockholders.

The next question arises upon the following language of Item 21 of the will: "I hereby direct my executors and trustees hereinafter named, ten (10) years after my death or as soon thereafter as possible to set aside a fund sufficient to care for the monthly cash bequests for life hereinbefore made by me, and to divide the remainder into two (2) parts . . . " In Item 8 of the third codicil the testatrix says:

"In Item 21 of my original will of date April 13, 1929, I directed my executors and trustees, ten years after my death, or as soon thereafter as possible, to set aside a fund sufficient to care for the monthly cash bequests for life made by me" . . .

and then further on in the same item she repeats the identical language again. The Chancellor held that this meant that this fund was to be set aside as soon after her death as possible, and not as soon after the expiration of ten years as possible. This construction of the court below seems not only to do violence to the language under consideration, but to be in conflict with the intention to be gathered from the whole will. The construction given practically strikes out the words ten years after my death. It is true the Chancellor says the meaning is "as soon after my death as possible, but at least at the end of ten years." We think this would be a strange and unnatural

use of words to say "do this as soon after my death as possible but at least at the end of ten years." Not within ten years, but at the end of ten years. No trustee would think of taking ten years to do what he was directed to do as soon as possible.

But besides the construction given is in conflict with the whole scheme of the will. A ten year period runs all through it. The trustees are to carry on the Crockery Company business for ten years unless they find that to do so would be against the interests of the estate. Subject to this discretion, it is the manifest wish and the very earnest wish of the testatrix that the business be continued for ten years and then wound up. Then the real estate is not required to be sold except by the end of ten years and full authority is given to mortgage same so that it can be carried, and the trustees need not be hurried in selling it. Nothing said about selling either real estate or stocks and bonds as soon as possible after her death. She evidently thought her estate would be more valuable at the end of ten years.

Again the Chancellor in his finding of facts which is not objected to by anyone says:

"The total estate of Mrs. Goodwyn undisposed of by specific bequest or devise, excluding assets in or connected with the Crockery Company, amounted to approximately $230,385. The total of her debts was $108,893.30, leaving a net balance of about $121,491.70. Income was produced only on about $46,630 of her property undisposed of specifically and not connected with the Crockery Company."

The will provides for monthly payments of $650 per month, or $7800 per year. At 6% this would require a fund of $130,000 to be set aside. With only $121,491.70 available, and of this only $46,630 producing any income, how is this fund to be arranged? But this is not all; when this fund is set aside, then the rest of the property is to be divided into two parts and subdivided and distributed and this is the decree, but where is the property to be divided? At the end of ten years, however, the situation, according to the hopes, expectations and intention of the testatrix, will be very different. The real estate will have become more valuable and will have been sold. The Crockery Company will have become more prosperous and the stock, increased in value, have been sold or be ready to distribute. Then after setting aside the fund to take care of the monthly payments the rest of the estate can be divided and distributed. If it had been intended that the fund in question should be set aside at once, the trustees would not have been directed to continue the Crockery Company business for ten years and have been allowed ten years in which to sell the real estate. If the fund to meet monthly payments is to be set aside at once and then the rest of the estate subdivided and distributed, the direction to continue the Crockery business for ten years is destroyed.

Suppose in the next few weeks or months the trust fund in question is provided, then according to the decree "All the rest of said trust estate will be divided by the trustees into two equal parts and distributed . . .". Does this mean that the stock in the Crockery Company must be divided or sold and turned into this income bearing fund to take care of the monthly payments? Again suppose after this trust fund is set aside, at once, and the rest of the estate is divided, some part of said trust fund is lost,—becomes valueless, then pro tanto the monthly payments must remain unpaid, whereas under our construction of the will the whole estate is security for these payments for ten years.

The construction we give to the will in regard to the time of setting aside this trust fund for monthly payments, does not forbid the trustees to get the estate into income bearing shape within ten years if and when in their judgment it is for the best interest of the estate to do so, even if this involves the sale of the real estate and the crockery business. It does not forbid the trustees to pay the monthly bequests out of any income that might be so arranged at any time within ten years, but on the contrary directs them to do so. All that we hold is that under the will the trustees are not required to set aside such permanent trust fund for monthly payments and divide and distribute the rest of the estate until the expiration of ten years from the death of the testatrix.

Counsel for appellees in their brief use this language:

"Likewise it is clear from the language of Item VIII of Codicil 3 and the language of Item XIX that it was the general design and intention of the testatrix that the executors and trustees were allowed ten years in which to revamp the trust estate, in order to accomplish the purpose of the trust by setting up this special fund. But, it seems too clear for argument that if the executors and trustees find that they can accomplish the revamping of the estate to make it income producing within less than the period of ten years, there was no mandatory direction that they cannot set up the special fund and make distribution of the balance until after the expiration of ten years, even though they might be ready to do so before then."

Here is an admission that it is the design and intention of the will that the trustees were to be allowed ten years in which to revamp the estate in order to accomplish the purpose of the will by setting up this special fund, but it is argued they are not forbidden to do it sooner. This argument overlooks the provision of the will that when the special fund is set aside all the rest of the estate is to be distributed. If the special fund is set aside at once then the rest of the estate must be distributed and the whole scheme of the will is defeated. On the other hand, assets of the estate can be made income bearing

without setting aside the special fund so as to incur the obligation to distribute the rest of the estate.

The Chancellor in his opinion says:

"When the investment in the Crockery Company is realized on and the real estate sold, the testatrix directed her estate to be divided, after first setting aside a fund sufficient to care for the bequests."

But if this fund is to be set aside at once, it destroys entirely the earnest wish of the will that the crockery business be continued if possible for ten years, and be not realized on sooner.

The Chancellor held that the trustees were to begin paying the monthly bequests at once, or as soon as practicable, without waiting to provide the fund to take care of said payments, but that such monthly payments must be paid out of the income of the estate and that no part of the corpus of the estate could be used for this purpose. We understand appellants to agree with the appellees that this ruling is correct in so far as it construes the will to intend that the monthly payments should begin at once, but the trustees contend that owing to the lack of income that the intention must have been to allow them to use a portion of the corpus of the estate for this purpose until such time as the estate can be readjusted so as to produce sufficient income. Inasmuch as both parties agree as to beginning the monthly payments as soon as possible, it is not necessary to enter into a discussion of the reasons for this construction. If the ruling was to stand, that the fund to take care of the monthly payments must be provided at once or as soon as possible, no matter what sales of real estate or stock must be made in order to provide said fund, perhaps it would not make much difference to the trustees whether they were allowed to use any of the corpus of the estate for the early payments or not, but if as we hold, this fund is not to be set aside until the end of ten years, the question becomes a very different one. Of course it goes without saying that the trustees should pay said monthly payments, as far as possible, out of the estate income and so arrange to do this entirely if possible, but the reasons given by the Chancellor and concurred in by both parties, showing that the testatrix must have intended these monthly payments to begin at once, lead conclusively to the intention that the trustees should be allowed in their discretion to use some of the corpus of the estate if necessary, rather than to defeat the purpose of the will by leaving these monthly bequests unpaid. Assuming that these monthly payments are to begin at once, it might entail more loss upon the estate to require the trustees suddenly on a depressed market to convert property not producing income into income bearing assets, than to allow as a temporary expedient the use of some of the corpus of the estate, and the testatrix will be presumed to have considered this. It will however, be considered the intention

of the will that this use of the corpus of the estate shall be adopted only as a last resort and to the least extent possible.

The decree of the chancellor will be modified in accordance with this opinion. The costs of the appeal will be paid by the trustees as a part of the expense of the estate.

Senter, J., and Steele, S. J., concur.